48 CCPA

**HOUSE OF WORSTED-TEX, INC.,**
Appellant,

v.

**SUPERBA CRAVATS, INC., Appellee.**

Patent Appeal Nos. 6610, 6611.

United States Court of Customs
and Patent Appeals.

Dec. 8, 1960.

Caesar & Rivise, Philadelphia, Pa. (A. D. Caesar, Arthur A. Jacobs, and Alan H. Bernstein, Philadelphia, Pa., of counsel), for appellant.

B. Edward Shlesinger, Rochester, N. Y., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

RICH, Judge.

These are appeals in consolidated oppositions.

Appeal No. 6610 is in opposition No. 36,055 to the registration of "Ivy Hall" as a trademark for neckties, application serial No. 694,931, filed September 19, 1955, by Superba Cravats, Inc., of Rochester, New York.

Appeal No. 6611 is in opposition No. 36,057 to the registration of "Ivy Loom" as a trademark for neckties, application serial No. 694,930, filed September 19, 1955, by Superba Cravats, Inc.

The opposer in each case is House of Worsted-Tex, Inc., a Pennsylvania corporation located in Philadelphia, the present owner by assignment from Cohen, Goldman & Co., Inc., the original registrant, of registration No. 371,524 of the trademark "Ivy League Model" surrounded by a rectangular line border, the goods named in the registration being: "men's, boys', and children's outer garments, consisting of coats, vests, pants, and trousers; also men's overcoats and topcoats; also women's overcoats, topcoats, and suits, consisting of outercoat, ensemble, vest, and skirt." This registration was granted under the 1905 Act on September 26, 1939, claiming first use November 5,

---

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* *Judge O'CONNELL*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

1938, and has been renewed for 20 years from September 26, 1959.

The assignment from Cohen, Goldman & Co., Inc., to opposer, dated June 27, 1950, shows that the entire business of the former was acquired, including a large number of trademarks and trademark registrations. The only trademarks pertinent here are listed in the assignment in the following words: "Ivy League Model"; "Ivy League Model positioned within a rectangle shown in Certificate No. 371,524" and in a long list of "Registered Marks" the item "371,524 Ivy League Model plus design Sept. 26, 1939 Cohen, Goldman & Co., Inc."

In its brief, opposer also claims to be the owner of the trademark "Ivy League" with no additions, embellishments, or qualifications and claims to have been using it continuously "since it acquired said trade-mark in 1950" from Cohen, Goldman & Co., Inc., which firm, it claims, had been continuously using that mark since 1938. The proofs, however, fail to show any acquisition from the said assignor of the simple "Ivy League" trademark or any use thereof by the assignor, as distinguished from the marks listed in the assignment.

Opposer took the testimony of one witness, its advertising director, in its employ only since 1950. He testified to substantial sales "under the trademark 'Ivy League' " and certain advertising expenditures by opposer and its customers in promotion of products thus sold. No example of an advertisement, however, was put in evidence. We are therefore unable to see in what manner the claimed use of "Ivy League" took place or in what manner it was promoted, whether by itself as implied by opposer or merely as a part of "Ivy League Model" or in some other way.

Opposer also put in evidence five labels about the use of which its sole witness testified. One of these reads:

Authentic
"Ivy League"

We are unable to find any clear evidence in the record as to when, on what, to what extent or by whom this label was used. Of the other four labels, two of them feature at the top in large type the words "Worsted Tex," at the left side is a small panel containing a police dog's head under which is " 'TEX' " and to the right of the dog between two horizontal lines and in much smaller type are the words:

Ivy
League

The remaining two labels are similar in composition except that the featured words are "Tropi-Tex," the words "Ivy League" are thereunder and above the top parallel line, and between the lines, to the right of the dog's head, are the words:

By the House of
Worsted-Tex

Opposer admits that "the words 'Ivy League' connote a group of certain eastern universities when used in their general sense" but would have us believe that "nevertheless *they refer only to the appellant's product when* they are *used in the clothing industry.*" In other words an "Ivy League" suit means to the purchasing public only a suit originating with opposer.

Applicant has introduced numerous exhibits consisting of excerpts from advertisements and editorial comments and even a crime news item showing common use of "Ivy League" and "Ivy" as an abbreviated form of reference to the same thing (as for example in the term " 'Ivy' style" or "The Ivy Man's Sport Shirt") to imply a style meeting with favor by or popular with those attending the Ivy League universities or colleges. Opposer's witness, questioned about these terms as used in several of the applicant's exhibits, admitted that the items of clothing therein referred to were not opposer's goods.

This case appears to resolve itself into two parts. Opposer of necessity is urging unregistrability of "Ivy Hall" and "Ivy Loom" on the basis of section 2(d) of the Lanham Act (Trademark Act of 1946) 15 U.S.C.A. § 1052(d), which provides that a mark shall not be registered if it

**530**

"(d) consists of or comprises a mark which so resembles [1] a mark *registered* in the Patent Office or [2] a mark or trade name previously *used* in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers \* \* \*." [Emphasis ours.]

 Insofar as opposer is relying on a registered mark, we must refer to the mark of its only registration of record, No. 371,524, which is for "Ivy League Model" positioned within a rectangle. That mark is so different from either of applicant's marks that, taking into account also the differences in the goods, we see no reasonable likelihood of confusion. Therefore, we find no basis in the registered mark for sustaining the opposition.

Insofar as opposer is relying on prior *use* of "Ivy League," on which mark it has not obtained registration, we are not obliged to regard it as possessing exclusive rights to that term by itself as a trademark, as we would be if it could point to an unimpeached registration thereof.

At the very least, the record shows that "Ivy League" has a primary meaning according to which it indicates a group of eastern colleges and universities and, by extension, things and matters pertaining thereto. In the clothing field "Ivy League" clothing would indicate to persons familiar with the "Ivy League" educational institutions—and their number is legion—styles somehow associated therewith. It would require much to develop a secondary meaning whereby the public would come to associate "Ivy League" clothing with a single manufacturer or vendor. The record here fails to show such a secondary meaning. For this reason opposer has failed to establish an exclusive right to the term "Ivy League" in the clothing field and cannot, therefore, show damage from the registration of applicant's marks.

Assuming, arguendo, that opposer has some rights in "Ivy League," those rights are certainly not of such a nature as to enable it to prevent the registration of applicant's marks "Ivy Hall" and "Ivy Loom" for neckties.

The decision of the board dismissing the oppositions is therefore affirmed.

Affirmed.